Seated. The court will call the next case. 315-0069 Nationstar Mortgage LLC, Appellee by Kerry Auger v. Anthony DeCore et al., Appellants by Justin Abdillah. Mr. Abdillah, you may proceed. Good afternoon and may it please the court. Justin Abdillah, for Anthony DeCore, defendant appellant. The factual background of this case is that on August 26, 2005, Anthony DeCore gave a promissory note with the mortgage's underlying security interest to First Advantage Mortgage LLC. MERS, Mortgage Electronic Registration Systems, was the mortgagee to that security interest, purporting to act as the nominee of First Advantage, the lender. Page 303 of Exhibit B to the complaint purports to contain the original signature of Anthony DeCore. It also purports to be specially endorsed by Pamela Kresh on behalf of First Advantage Mortgage Company, LLC, in favor of Lehman Brothers Bank FSB. This transaction purports to have occurred on August 26, 2005, the same day as the execution. Included with Exhibit B to the complaint is an undated allonge containing three purported endorsements, the first of which will be the focus of the argument today. That first endorsement, which will be the focus of my argument, is the special endorsement purporting to read, Pay to the Order of Lehman Brothers Bank FSB, Pamela Kresh, Closing Manager, First Advantage Mortgage, LLC. Crucially, this document is a note, which was not a recorded document typically in the public record. Many times, and in this case, the first time that the defendant would have had the opportunity to see this note was when the complaint for foreclosure mortgage was filed. Plaintiff's complaint, paragraph 3J, states that the capacity in which plaintiff brings this case is as the holder of the mortgage and the underlying promissory note, as of June 5, 2013. On or about August 26, 2014, the trial court granted summary judgment after a briefing schedule and oral arguments, and judgment of foreclosure and sale was entered simultaneously. At that motion for summary judgment and the proceedings thereto, the affidavit pursuant to Illinois Supreme Court Rule 191 and 735 ILCS 5-15-1506 would state that a true and accurate copy of documents that the plaintiff, Ethelene Nation Star Mortgage, Affiant, reviewed were attached. The affiant reviewed the complaint. He reviewed a skip trace, a payment quote, a payment history, a loss mitigation packet, and a document entitled JFIGS Worksheet. Nothing speaking to the standing issue was reviewed in the enumerated or attached list, and the record site for that is C-344. Moving into the arguments that I will present today, the first issue is whether the Pamela Kresch endorsement's visible differences between each other in Exhibit B would create a genuine issue of material fact for trial. As a preliminary note, I will refer to the Pamela Kresch signature on the purported endorsement on page 3 of 3 of the note as the note signature, and will refer to the signature on the purported allonge as the allonge signature. As defendant and appellant recited the standard of review for the motion for summary judgment, summary judgment is appropriate where the pleadings, affidavits, depositions, and admissions on file show there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. Review here is made, de novo. While the mere suggestion that a genuine issue of material fact exists without supporting documentation will not preclude the entry of summary judgment, a triable issue of fact will exist where there is a dispute as to a material fact, or crucially, where reasonable minds may differ in drawing inferences from facts which are not in dispute. The first clause of that statement would cite to Marriage of Heroy, 385 LF, 3D, 640, page 699, First District Opinion, 2008. The second clause I am citing to Petrovich v. Share Health Plan of Illinois Incorporated, 188 Illinois 2nd, 1731. That's a 1999 case. Case Rubidoux says to survive a motion for summary judgment, it would be the responsibility of the non-moving party to present a factual basis which would arguably entitle them to judgment. We cite here to Rubidoux v. Oliphant, 201 Illinois 2nd, 324, pages 335 and 36, 2002. In this case, affirmatively, the Pamela Crash endorsements are a genuine issue of material fact for trial. Citing here to the original answer in the case, present in the record at pages 179 and 180, paragraphs 21 through 28 of the affirmative defense of standing, I'd like to briefly revisit the argument made. The P in the note signature for Pamela has a wide hoop in the vertical line where the Allonge signature does not. The M in the note signature has three hoops. In the Allonge signature, there are only two. In the word Crash, the S is closed in the note signature but left open on the Allonge signature. The H in Crash is signed with a straight line and a trough finishing the stroke on the note signature but with a hoop on the Allonge signature and a full stop at the end of the pen stroke on the Allonge signature. There was no dispute in the record that these differences exist. The dispute before the court would be the inferences drawn from those differences. Is it enough just to state that there are differences in order to raise the question of fact? I mean, is your client qualified to have that kind of a handwriting analysis? I don't understand your question, Judge. Well, I mean, I sign my name differently a lot. That doesn't mean it wasn't me that signed it. So just if somebody said, I don't think those are the same signature, her M is different, the O is different, the B is different. Sometimes they don't use an apostrophe. Is not the same as saying that it's not the person, Pamela Crash, not signing those. So wouldn't you have to have handwriting analysis to say that they are, that it was a different person that signed those? Well, Your Honor, I believe the crucial point here is that the document itself presents inconsistencies on its face between the two signatures. Regardless of whether you would draw the conclusion that this is or is not a person's signature from the way it looks immediately, I think it is a much simpler inference to draw that the letters are typically made the same way with the same number of pen strokes. In this case, four different letters have different makings in different pen strokes. The strokes finishing the name change, the strokes beginning the name change. The letters are not in different fonts. The conjecture here is genuinely that the letters are made differently in between the two names. Can you take judicial notice of that fact? Because that's the way you seem to be arguing it. I mean, all those things you just said were things that would require some expert testimony. Well, Your Honor, with regard to that you could make an inference that people would normally do this, same loop, same this. Those are all statements or positions. But there was no expert testimony about this. There was no expert testimony propounded here. And those are statements about handwriting. So you're asking, it almost appears you're asking to take judicial notice of those inferences. But that's a question of evidence. I suppose, Your Honor, that the request that we are making is that the court treat the evidence in front of it with suspicion, that the court treats these two competing signatures on the same exhibit with suspicion and makes further inquiry. I'm not asking the court and Mr. DeCourt to not ask the court at the trial court level to draw this inference definitively for him. What we asked the trial court level to draw the inference was that there was not enough information before the court to say as a matter of evidence that these are genuine authentic signatures. Well, some of the judgment that's in there is whether they present prima facie evidence and whether or not there's a material issue of fact on these points. And that has to be, what are the material issues of fact? Well, Your Honor, the material issue of fact would be whether the Pamela Kresch endorsements were effective to pass title from First Advantage LLC to Lehman Brothers FSB. The affiant does not contribute anything to resolve the matters with other facts. Crucially, there is also an inconsistency in the affiant's testimony, where the affiant claims that servicing rights were acquired by Nation Star from Aurora Loan Services LLC. He does not speak to the possession of the note. I am going to revisit why some of these inferences could be drawn as to why DeCourt has presented a genuine issue of material fact sufficient for trial. The mortgage notes are negotiable Transfer requires negotiation. That is to Section 3-201. Signatures are afforded a presumption of validity, but challenges to the validity of signers are not precluded by the statute. That is Section 3-308. Alterations will discharge a party where that party's obligation is affected by the alteration unless that party assents or is precluded from raising the alterations. That is to Section 3-407. DeCourt can point directly to the face of the note, exhibit B to the complaint, as presented, and show a direct inconsistency in the signatures of a woman, but for whom his promissory note would not be enforceable by this particular foreclosure plaintiff. Different from all of the other signature cases that the appellate courts have ruled on and have decided, the discrepancy here is in the same exhibit. The record clearly reflects that the bank produced no competent supporting documentation in that affidavit or otherwise demonstrated that the note at issue was negotiated to Nation Star Mortgage LLC. Plaintiff appellee's response conflates the appellant's response. While Nation Star claims that one of the signatures was said to be valid and one to be a forgery, this was not the basis of the appeal. DeCourt's argument is that both signatures are inconsistent to each other, and within the four corners of the record, exhibit B to plaintiff's complaint, insufficient evidence was presented to rectify the inconsistency. The inconsistencies give rise to a dispute over the inferences to be drawn from the signatures. Accordingly, this aspect of the response does not address the issue as the appellant addressed the issue. The response claims that the inconsistencies and discrepancies fall short of the evidence required to rebut the presumption under Section 3-308A of the Illinois Uniform Commercial Code. This statement was without supporting authority in the response. The response continues to maintain that it is indisputable that the note was negotiated to bear assertion that presumes the factual inferences in the light most favorable to Nation Star. However, where we draw inferences most favorable to DeCourt, the record reflects no evidence that the transaction from First Advantage to Lehman Brothers FSB occurred. In fact, the 191 affidavit states that Nation Star Mortgage received its interest as servicing rights from Aurora Loan Services, LLC. The Rhodes affidavit does not identify by name to whom the payments would have been owed. I'm pointing to page 344 of the record. Rhodes identifies Nation Star Mortgage, LLC, as servicing a loan on behalf of plaintiff. The affidavit does not instruct with regards to the note, but only with regards to some other third-party servicing contract. In DeCourt's reply, he raises the recent case of U.S. Bank v. Coasterman at 2015, Bill at First 133627, pointing to paragraph 18 in particular. Coasterman restates that the proofs presented at summary judgment are to demonstrate the plaintiff's right of recovery to the court. Even the standard in challenge and impeach untrustworthy evidence at trial. Importantly, this does occur in the Hardesty case. While the response argues expert witness testimony is necessary, an analysis of the admittedly sparse body of law present in the briefs will construct to show that in this particular case, lay testimony does suffice. Illinois Rule 701 controls whether expert or non-expert witness testimony is necessary. The lay testimony in this case is, vulgarly speaking, that the signatures do not look alike and have differently crafted letters. The first element is that it must be rationally based on perception. That was a presentation by the lawyer, right? Yes. Here, the perception can be vulgarly expressed that way. That was the lawyer's argument? It was. And that's what you say is the contrary evidence? Yes. Testimony was offered to determine whether the negotiation should be presumed effective or whether the presumption under 3-308 was rebutted. Admittedly, this is different than the reply brief statement, but it is indicative of the intent to determine the veracity of the Pamela Crash endorsements. And then the third element, the idea that two signatures should have similar looking letters, we argue is not testimony requiring specialized knowledge. The contention here is that the plain observation of the signatures will show that they are inconsistent. And I grant that it would have been possible to make IRE 702 testimony on this issue and subpoena a handwriting sample of Pamela Crash to subject to handwriting analysis to contrast against the note. That did not happen, and did court ask the court to consider only if the analysis offered did create an inference that would demonstrate a genuine issue of material fact for trial. So in conclusion to my first round of argument, summary judgment was improperly granted as the Pamela Crash endorsements discrepancies present a genuine issue of material fact for trial. Put simply on review, the trial court should have found only that insufficient evidence was presented to it by Nation Star and accordingly should have denied the motion for summary judgment. But for the inferences improperly four Nation Star in the instant cases summary judgment proceedings, DAPOR would have successfully rebutted the 3-308 presumptions of the signatures. And finally, we ask that the affidavit attached to the 2-1005 motion was insufficient to establish plaintiff's standing. It was not competent to rebut the plain reading of the motion. May it please the court. Counsel, for the record, my name is Harry Arter. I'm here for the plaintiff Nation Star Mortgage LLC. I'll skip over some of the facts because I know you've read the briefs and Mr. Abbello gave you an overview of some of the facts. I think Justice Carter was getting to the point that I was going to raise, which is, you know, we've established there was a prima facie case in here. I mean, we complied with 15-1504. We complied with Rule 113. There's no dispute that Mr. Decor signed the loan documents, the mortgage and the note. They're not contesting any of these things. They're not contesting the deal was the money. There's a lot of things that are not contested in this case. The only thing that's contested is the signatures of Pamela Kresh on one page versus another. And I thought it was interesting that they talked about, well, four of the letters are different. As I'm sitting here, I just counted them up. There's actually 12 in her name. So eight of them are the same. So I mean, Justice Carter was getting to this. There's no evidence. There's no contrary evidence to dispute any of the prima facie basis that was established when the complaint was filed and with the affidavit that was presented in summary judgment. And the documents themselves cannot create a question of fact like that. There's no evidence. It's not even evidence from the defendant himself. This is their lawyer. Now, it wasn't Mr. Abdullo. There was a different lawyer, Mr. McCaffrey, who actually did it. No affidavit, no anything. And I thought it's interesting that they brought up the Hardesty case because that was cited and discussed in the motion of summary judgment pleadings. And the Hardesty case went through an analysis of how there's so many presumptions with signatures in these commercial documents. It would set it on its ear if every Hardesty, by the way, there was a handwriting expert. There actually was testimony where he says he wasn't even there. I think his general foreman, who was a disinterested party, which is another thing that they get into in these cases on whether you're interested or disinterested, disinterested party, his foreman said he was at work that day. So that's what they did. But they went through and they established a standard of clear and convincing evidence, not just some lawyer putting it in a brief or a motion, clear and convincing evidence that there's some dispute the validity of the signature, which are presumed under the mortgage laws to be valid in the first place. And so I just thought it was interesting they bring that case up because in that case they had a handwriting expert. There's no evidence in the record in this case that Mr. DeCore ever tried to do any discovery, ever sought any discovery, ever did any, even submitted an affidavit. It's nothing more than there was initial motion to dismiss that was filed by Mr. DeCore's original even admitted it. I think it was on page C139 of the record. He said, I'm not an expert. And he says it's not. So we're at the point where the prima facie case has been established. It's a straightforward foreclosure. All the documents have been uncontradicted as to the debt that's owed and that payment was stopped. They were in default since February of 2013. There's no evidence to the contrary of any of this stuff. The only thing in response to that to try to their burden back is to say, well, look at four of these letters. They look different. And as Justice O'Brien just said, I don't know that I sign my signature the same way every time. But the person who's in the best point to review all that is the trial judge. And presumably we don't have a transcript. And it's the appellate's burden to make sure the record's complete. We don't have a transcript. But presumably the trial judge reviewed all those things. People have been being presented today. And one thing I would like to add is that they didn't get into, we talked about some of the cases that they cited in their brief and distinguished them. The Gilbert case has got a lot of discussion. And that case is different. It wasn't endorsed in blank like there is here. And they don't dispute that there was an endorsement in blank here. They're just picking with Pamela Cress's two signatures. And I don't know why we didn't cite it. But I thought an interesting case that I just happened to find when I was preparing for this oral argument that came down, I believe Justice wrote the opinion. It was the Roe case back in June, which I'm probably breaking procedure here. But I would like to move to supplement our support with a case that was decided by this district. And I think Justice Carter concurred on it. HSBC Bank versus Roe. In that case, they actually, what was the citation? I'm sorry. 2015, Hill App, 3rd District, 140553. I do have multiple copies. I did give it to him this morning. And I have extra copies, which I can leave or I can file You can leave them with the clerk. Thank you very much. And then we would generally closing council. I gave them before everyone. We're posting council line time to respond to this submission here. Yes. We'll grant 14 days in order to respond to that. So you can file that in 14 days for today's argument. You may proceed, Mr. Arthur. Okay. It kind of gets to the Gilbert case, and I call it the Canale case, C-A-N-A-L-E, that they talked about where both of those had different facts. And there was, and actually in Canale, they didn't even get to the standing issue. They purposely said they were not getting to the merits of standing. But I thought this Roe case that I just cited that came down by this was interesting because there was a slight discrepancy in that case, and the court still affirmed summary judgment because it didn't go to the standing issue. At best, it went to some other issues that weren't pertinent to the foreclosure summary judgment. So that's why I wanted to bring it to your attention. I don't know what they're making with the affidavit. I mean, they say there's inconsistencies. There's no inconsistencies in the affidavit. It complies with, you know, Rule 191, Rule 113, in all respects. And all they're saying is that, well, there isn't anything tying to the standing issue. There's nothing new to do on the standing issue. It's a prima facie case that has not been overcome or rebutted. That affidavit was for amounts due and owing, and there's no dispute. They haven't contested any of the amounts due and owing. So there's no inconsistencies in the affidavit. We don't think there's any genuine issue of any material fact. The trial judge was correct, and we think this is a simple case where there was an endorsement in blank, which is uncontradicted. It was bare paper. We had possessed it. We attached it for the rules, the note, the mortgage, the allonge. It were all attached. We even had another assignment of mortgage that predated the filing of the complaint to confirm that Nation Star was the proper party here. And there's no dispute as to any of that. The only thing they're raising is that the signatures look different to their eye, but for reasons we've stated in our brief and what I've tried to say here today is there's no evidence. There's no evidence to be considered in opposition to the prima facie case. The Parkway case and all these other cases where you cannot make a question of fact by arguing something in a brief. And that's all they did at the trial court level. That's all they've done here. They had opportunities. If they wanted to do discovery, they did not take advantage of those opportunities, and it's too late now to raise at this time that they have an opportunity to make a question of fact, get it sent back to the trial court, and further delay the foreclosure in this self-authentication rule 902, evidence rule 902. There was never any discussion of that at the trial court level. We believe that that's been waived because it hasn't been. But even if it hadn't been, I mean, it's a prima facie case, so it doesn't change the outcome of this. Standing as an affirmative defense. Standing as an affirmative defense. We're not required to plead it, but if they plead it as an affirmative defense... Then you have to respond. Then we, well, prima facie case takes care of it, but yes. And that's where, if you're familiar with the Gilbert case, there's some different districts. I know the first district hasn't adopted it. I know some other districts are kind of on the fence. But the bottom line is that really doesn't apply here because it's just factually different. And Gilbert, if you remember, it was not an instrument that was endorsed in blank. And the issue there was there was an assignment after the complaint was filed that raised the question in the, I believe it was the then thought they shifted the burden back and there was nothing further said in terms of the record. But totally, completely different facts from what we've got here. And as I said, the only facts we have are what the plaintiff, what we, NationStar, presented in our case. There's no facts been presented, no counter affidavits. There's not even any testimony from Mr. DeCore himself. As I said, it's only from the lawyers. So you got a blank endorsement. We got possession. Prima facie case hasn't been contradicted with any evidence. Therefore, they're standing for NationStar to foreclose. And we'd ask that the judgment be affirmed. Thank you, Mr. Arger. Thank you. Mr. Abdullah, for rebuttal. In a few words in rebuttal, the appellee makes a large claim that they have established a prima facie case, which they would have done if they had presented a note validly endorsed in blank. The challenge that we have made disputes the very first endorsement of first advantage to Lehman Brothers FSB. This is not a note and a launch that has just these parties. Named in the case, our first advantage, Lehman Brothers FSB, Lehman Brothers Bank Incorporated, Aurora Loan Servicing, and then NationStar Mortgage. NationStar Mortgage is the fifth person appearing, well, the fifth entity named in this case. We rebut this prima facie case by showing the exhibit has inconsistencies to itself. While the appellee's attorney states that eight of these letters are the same, that only says that these signatures are 66% alike. The Hardesty case, although it is not similar, well, not exact in the facts, did allow the court to examine the signatures as to whether they are suspicious. And if they were sufficient to pass to the 3-308 presumptions. That was why we brought up Hardesty, because the court in Hardesty determined that the trial court had the ability to examine these signatures for their suspiciousness. I will agree with the appellee that Gilbert, in terms of the factual posturing of the assignments, is a different case from this one. We cited Gilbert because Gilbert fundamentally decides in its reasoning that the affidavit did not establish the standing. Gilbert decision was made because when it came time to determine what the additional facts were by analysis of the 1506 affidavit, the affiant was just not helpful. And so the true reasoning of Gilbert is that it's a 191 section 15-1506 affidavits case. And that is what Gilbert has stood for in the second district since it was handed down. I had a moment to look over the Roe case, and it's just a quick word on it. The Roe case turns on the reasoning that the appellant did raise any question as to who holds title to the note. Here, we raise that question as to who holds title to the note by questioning whether First Advantage LLC validly negotiated the note to Lehman Brothers FSB. In Canale, the dicta of the case was that where the foreclosure plaintiff's original lender, the plaintiff's standing would be much in doubt. Here, again, there are five parties, financial institutions, in this case. This note has been purportedly transferred at least four times. Finally, once again, this affidavit, like the affidavit in Gilbert, was silent to that issue of standing and only recited the allegations as made in the complaint. It calls NationStar the servicer at all times. It never once states NationStar mortgage the plaintiff. It only uses the stand-in phrase, the pronoun, plaintiff, in the affidavit. And so that affidavit is also not helpful to solve the problems of standing caused by the inconsistencies in exhibit B to the complaint. Since you've responded to the Roe, did you want to add to the record? I wanted to make a bit more of a factual distinguishment of this case from Roe. I did want to address Roe in that the reasoning as I read it was fundamentally about the title. But factually, I would like the opportunity to supplement the record. That is all I have for rebuttal. Thank you. Thank you both for your arguments here today. This matter will be taken under advisement, and a written decision will be issued to you as soon as possible. Right now...